IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARILYN T. JACKSON, ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> MARK T. ESPER, Secretary of Defense, ) <br> ) <br> *Defendant.* ) <br> ) | Civil No. 1:19-cv-659 <br> Hon. Liam O'Grady |

## MEMORANDUM OPINION & ORDER

This matter comes before the Court on Defendant Mark T. Esper's Motion for Summary Judgment. Dkt. 31. The motion was fully briefed, and the Court dispensed with oral argument because it would not aid in the decisional process.

### I. BACKGROUND

Plaintiff Marilyn T. Jackson ("Plaintiff") is an African-American woman over the age of 40. She sued her former employer, Department of Defense Education Activity ("DoDEA"), alleging retaliation and discrimination based on race and sex, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and discrimination based on age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623. Plaintiff also challenged the Merit Systems Protection Board ("MSPB") decision which upheld her removal pursuant to the Civil Service Reform Act, 5 U.S.C. § 2302.

### A. Employment in Japan and Subsequent Transfers

DoDEA hired Plaintiff in 1998 as a pre-kindergarten teacher, and she worked at a school located on a United States military installation in Japan. On December 10, 2007, Plaintiff's three adopted minor daughters contacted the installation's military police. The girls complained of

abuse.[1] As a result of the allegations, the girls were removed from Plaintiff's home. The children never returned to Plaintiff's residence, left Japan, and were placed in foster homes.

The Commander in charge of the installation convened a Family Advocacy Program ("FAP") Case Review Committee ("CRC") to consider the child abuse allegations. Before the CRC met, the Navy notified Plaintiff's spouse by letter that he could submit information or a statement for consideration. The CRC subsequently met, considered the Navy Criminal Investigative Service report and alleged victim statement, then determined the "case to be substantiated for child physical abuse." Dkt. 32-1 at 40, DEX 2. Neither the Naval Commander nor any of the CRC members were DoDEA personnel.

Plaintiff appealed the CRC decision. She did not furnish a written statement, other supporting materials, or any new information in her appeal. The Navy's Headquarters Review Team ("HRT") met on May 7, 2008, reviewed all available materials, and upheld the CRC's determination.

On June 20, 2008, after the appeal, the Commander convened a hearing regarding the consequences of the NCIS investigation known as a Civilian Administrative Forum ("CAF"). Plaintiff was not present, and at the hearing the Commander found sufficient evidence of offenses of child abuse and child neglect. Based on those findings of misconduct, the Commander debarred[2] Plaintiff from entering United States military facilities in Japan. She later unsuccessfully appealed her debarment in 2012, 2016, and 2017.

---

[1] Plaintiff's opposition purports to dispute allegations of physical abuse, Dkt. 36 at 24, but in her own deposition, when she was asked what the girls complained of Plaintiff replied, "emotional and physical abuse," Dkt. 32-1 at 12, DEX 1 (Dep. Tr. at 38:11).
[2] Debarment is a remedy available to military installation commanders, pursuant to their inherent authority, by which they exclude people from installations and bases under their control.

After her debarment, Plaintiff was transferred by DoDEA. She worked at a school in the Netherlands beginning in September of 2008. On January 9, 2009, she filed a formal Equal Employment Opportunity complaint alleging race, sex, and age-based discrimination which allegedly occurred between 2006 and 2008, in Japan. The complaint was dismissed for failure to report the allegations within forty-five days of the last alleged incident. Plaintiff was transferred again by DoDEA in August of 2010 to a new position in Korea. After her transfer to Korea, on November 12, 2010, the Equal Employment Opportunity Commission's Office of Federal Operations affirmed dismissal of her complaint.

## B. Reverification and Removal

On October 1, 2014, the Department of Defense ("DoD") published a proposed rule entitled "Background Checks on Individuals in DoD Child Care Services Programs." 79 Fed. Reg. 59168. The proposed regulations established and updated DoD policy and procedures regarding background checks for personnel involved in providing child care services to children in DoD programs. The final rule became effective on October 19, 2015. 80 Fed. Reg. 55752. Pursuant to the final rule, codified at 32 C.F.R. Part 86, DoDEA teachers were subject to background checks, and required reinvestigation of prior background checks. DoD implemented the new final rule through new policy documents, DoD Instruction ("DoDI") 1402.05 and DoD Manual 1402.05, which provide background check reverification procedures.

Plaintiff underwent reverification of her background checks. On September 18, 2017, the principal at Plaintiff's school informed her that, effective the next day, she was assigned to work from home pending a suitability review. Three months later, the Security Management Division ("SMD") of DoDEA informed Plaintiff, by letter, that her suitability as a DoDEA teacher was under review. Specifically, SMD noted that Plaintiff's CAF, which resulted in her debarment

3

and misconduct findings, may disqualify her from employment. In the letter, SMD notified Plaintiff that she had thirty days to respond with mitigating documentation by either mail or email. Plaintiff, through counsel, replied with a letter but did not supplement the record with mitigating documentation.

SMD issued Plaintiff a Final Fitness Determination on March 9, 2018, in the form of a memorandum signed by Ms. Andrea Dezan, the DoDEA Security Program Manager. The Final Fitness Determination stated that SMD found, after conducting the review, that Plaintiff was not fit for employment in a position involving child care services, based in part on her debarment and the FAP proceedings. Plaintiff appealed this determination on April 19, 2018, and her appeal was denied on May 3.

On May 9, 2018 Plaintiff's school principal issued a notice of proposed removal based on her fitness determination. This memorandum explained that Plaintiff underwent reverification of background checks pursuant to DoD requirements, was found ineligible to work around children, and that the DoDEA had no obligation to place her in a position which does not require working around children. It also proposed removing Plaintiff from her position because she was ineligible to work around children. On May 11 Plaintiff acknowledged receipt of the memorandum.

The notice of proposed removal provided that Plaintiff could reply to it by directing a response to the superintendent within twenty days. Plaintiff timely replied to the superintendent through counsel but did not provide additional materials or information. After reviewing that response and the other documents in the case, the superintendent sustained Plaintiff's proposed removal on June 8, 2018. Plaintiff's removal became effective on June 11, and she acknowledged receipt of the memorandum setting forth her removal on the same day.

4

### C. Administrative Appeal

Plaintiff timely appealed her removal to the MSPB on June 18, 2018. Administrative Law Judge ("ALJ") Kang held a hearing on September 20 and October 2, 2018. Plaintiff, Ms. Dezan, Plaintiff's principal, and the superintendent each testified. ALJ Kang issued an initial decision on December 12, 2018. The initial decision found by a preponderance of the evidence that (1) Plaintiff was required as a condition of employment to maintain her fitness to work around children, pursuant to DoD rules and regulations; (2) Plaintiff failed to meet that condition based on the SMD fitness determination; (3) Plaintiff was afforded a reasonable opportunity to establish her eligibility to work around children, and; (4) each of Plaintiff's affirmative defenses failed. Dkt. 22-3 at 132-33 (MSPB 715-16). Based on these findings, and because he found a nexus between Plaintiff's unfitness and her removal, ALJ Kang sustained Plaintiff's removal. This initial decision became the MSPB final decision because Plaintiff failed to appeal it within thirty-five days.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of establishing the basis for its motion and identifying the evidence which demonstrates the absence of a genuine issue of material fact. *Id.* Once the moving party satisfies its initial burden, the opposing party may show by means of affidavits or

5

other verified evidence, that a genuine dispute of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012) (citation omitted). "[T]he mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Where the nonmoving party fails to make a showing on an essential element of the claim for which she bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

This is a "mixed case" in which Plaintiff seeks "both review of the MSPB's decision as well as *de novo* review of [] discrimination and retaliation claims." *Luther v. Gutierrez*, 618 F. Supp. 2d 483, 489 (E.D. Va. 2009). "Federal district courts have jurisdiction to hear appeals from the MSPB when such appeals involve both nondiscrimination and Title VII discrimination claims." *Monk v. Potter*, 723 F. Supp. 2d 860, 872 (E.D. Va. 2010) (citing 5 U.S.C. § 7703(b)(2)), *aff'd sub nom. Monk v. Donahoe*, 407 F. App'x 675 (4th Cir. 2011); *see also id.* at 490 (citing *Afifi v. U.S. Dep't of Interior*, 924 F.2d 61, 62-63 (4th Cir. 1991)). The analyses are distinct and subject to different standards of review set forth by statute.

#### A. Nondiscrimination Claim Under the Civil Service Reform Act

"[R]eview of any non-discrimination claims presented before the MSPB is limited to the administrative record and is thus subject to a [] deferential standard established by statute."

*Luther*, 618 F. Supp. 2d at 490 (citing § 7703(c)). The statutory standards require an MSPB decision to be set aside only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." § 7703(c). The "arbitrary and capricious standard is extremely narrow, and allows the Board wide latitude." *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6-7 (2001). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Consol Buchanan Mining Co., LLC v. Sec'y of Labor*, 841 F.3d 642, 647 (4th Cir. 2016), *as amended* (Nov. 23, 2016) (quoting *Almy v. Sebelius*, 679 F.3d 297, 301 (4th Cir. 2012)). A court should not "substitute its own judgment for that of the Board." *Gregory*, 534 U.S. at 7. "The burden is on the appellant to prove [such] arbitrariness or capriciousness, procedural impropriety, or lack of substantial evidence." *Monk*, 723 F. Supp. 2d at 873 (alteration in original) (quoting *Harris v. Dep't of Vet. Aff.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998)).

The administrative record supports the ALJ's findings and conclusions, and Plaintiff has failed to meet her burden of showing the MSPB decision to be arbitrary, capricious, procedurally improper, or without substantial evidence. The final MSPB decision, as set forth in ALJ Kang's initial decision, found:

1. Plaintiff was required to maintain her fitness to work around children as a condition of employment under DoDI 1402.05;

2. As a result of her fitness determination, Plaintiff failed to meet that condition;

3. Plaintiff had a reasonable opportunity to meet the condition because she had opportunities to respond in proceedings, and;

4. Plaintiff was ineligible to work around children as a result.

7

Each of these findings is supported by substantial evidence in the administrative record.

First, the record shows that Plaintiff was required to maintain fitness to work around children. The position description for her DoDEA teaching job states that it "requires a successful National Agency Check with Inquiries (Childcare NACI [] CNACI) and a check of State Criminal History Records (SCHR)." Dkt. 32-1 at 87, DEX 6 (MSPB 176). Furthermore, it is undisputed that Plaintiff—as an elementary school teacher—was a person providing childcare services, and she was thus subject to background check reverification pursuant to DoDI 1402.05 and 42 U.S.C. § 13041.

Second, the record shows that Plaintiff failed to maintain fitness to work around children. The statute, regulation, and DoD Instruction disqualify employees from providing childcare services based on criteria including FAP records indicating child abuse or neglect, or evidence of poor judgment, unreliability, or untrustworthiness. *See* Dkt. 32-1 at 103, DEX 8 (MSPB 189). The administrative record is replete with evidence that Plaintiff was debarred and subject of a FAP record finding child abuse and neglect. *See, e.g.*, Dkt. 32-1 at 40, DEX 2 (CRC determination of substantiated child physical abuse); Dkt. 32-1 at 46, DEX 3 (HRT decision upholding CRC determination); Dkt. 32-1 at 48, DEX 4 (CAF disposition of debarment). The record also reflects that pursuant to the statute, regulation and DoDI, it is the fact of those records—not their validity or that of the underlying the allegations which gave rise to them—which triggers presumptive disqualification. Finally, the record reflects that Plaintiff was disqualified by SMD after her reverification presumptively disqualified her and she, importantly, failed to rebut the presumption. There is, accordingly, substantial evidence supporting the finding that Plaintiff failed to maintain her fitness to provide childcare services.

8

Plaintiff contests this finding, arguing that the MSPB decision must be set aside because "there were inconsistencies in the evidence and yet the [ALJ] ruled that ... Plaintiff's fitness determination necessitated her removal." Dkt. 36 at 13. More specifically, Plaintiff contends that substantial evidence does not support her removal occurred pursuant to regulatory "presumptive disqualification" because she received a letter which stated that she met the criteria for "automatic disqualification," which is not the case. See Dkt. 32-1 at 156, DEX 11 (MSPB 200). Although this letter, an "Inquiry Notification Letter," invoked the incorrect disqualification category and criteria, it was not signed by a decision maker, served merely as notification of a pending review, and most importantly, was not a fitness determination. The final fitness determination issued three months later and was signed by decision maker Ms. Dezan, who later testified that the removal decision was made based on presumptive disqualification procedures, not automatic disqualification procedures. See Dkt. 32-1 at 162-63, DEX 13 (MSPB 204-05) (final fitness determination); Dkt. 22-3 at 130-31 (MSPB 713-14) (ALJ Kang finding Dezan's testimony credible).

In sum, there is substantial evidence that Plaintiff was removed pursuant to presumptive disqualification procedures. It is undisputed that relevant statute (42 U.S.C. 20351), regulation (80 Fed. Reg. 55760), and implementing policy guidance (DoDI 1402.05) identify certain criteria for presumptive disqualification, and that those criteria include an FAP record of child abuse or neglect, and evidence acts tending to indicate poor judgment, unreliability, or untrustworthiness in child care. It is also undisputed that Plaintiff has an FAP record, and that her debarment resulted from acts relating to child care. Accordingly, there is substantial evidence she was subject to presumptive disqualification, and the record further indicates the fitness determination occurred only after she was given an opportunity to rebut the presumption.

Third, the administrative record reveals that DoDEA provided Plaintiff several opportunities to respond during the fitness determination proceedings. In addition to the opportunities that the Navy afforded Plaintiff in 2007 and 2008 to respond to the underlying child abuse allegations, Plaintiff had notice and an opportunity to be heard by providing additional information during her fitness review. For example, both the December 22, 2017 Inquiry Notification Letter, Dkt. 32-1 at 156, DEX 11 (MSPB 200), and the March 9, 2018 Final Fitness Determination, Dkt. 32-1 at 162-63, DEX 13 (MSPB 204-05), outlined procedures to provide mitigating documentation in response to the reverification process. Substantial evidence therefore supports the finding that Plaintiff had a reasonable opportunity to meet the condition because she had opportunities to respond before her removal.

Fourth, the ALJ found that Plaintiff was ineligible to work around children, and this conclusion is supported by substantial evidence. The MSPB decision addresses Plaintiff's affirmative defenses in detail, identifies support in the record for each finding and conclusion, and Plaintiff fails to point to anything demonstrating arbitrariness, capriciousness, procedural impropriety, or lack of substantial evidence. *See* Dkt. 36 at 10-13 (arguing only that Plaintiff "does not meet the criteria for automatic disqualification" under DoDI 1402.05).

"The role of judicial review is only to ascertain if the Board has met the minimum standards set forth in the statute." *Gregory*, 534 U.S. at 7. Here, the Board has met the statutory standards because the decision is supported by substantial evidence, not arbitrary and capricious, or procedurally improper. Furthermore, because the determination of a penalty is committed to the employer agency, reviewing courts do not disturb penalties which are not so disproportionate as to constitute an abuse of discretion. *Luther*, 618 F. Supp. 2d at 495. Accordingly, Plaintiff's non-discrimination claims under the CSRA fail.

## B. Discrimination Claims Under Title VII and Age Discrimination in Employment Act

Unlike non-discrimination claims, district courts review claims of discrimination or retaliation *de novo*. *Luther*, 618 F. Supp. 2d at 490; §§ 7703(b)(2), 7703(c). While "the court may consider evidence from the MSPB's formal record," summary judgment may not be entirely based on only administrative record without affording due consideration to discovery materials. *Monk*, 723 F. Supp. 2d at 872 (citing *Chandler v. Roudebush*, 425 U.S. 840, 863-64 (1976)). Plaintiff failed to conduct any discovery. Accordingly, the administrative record has been supplemented only by the discovery materials presented by Defendant. Plaintiff has asserted that her removal was discrimination based on her race, sex, and age, and that she was retaliated against for her engagement in protected activity.

Because there is no direct evidence of discrimination here, the parties correctly agree that the burden shifting framework first set out in *McDonnell-Douglass Corp. v. Green*, 411 U.S. 792 (1973) applies to Plaintiff's discrimination claims brought under both Title VII and the ADEA. *See Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998). Under the burden shifting framework, Plaintiff must first establish a *prima facie* case of discrimination or retaliation. *Id.* Because a *prima facie* case gives rise to an inference of discrimination or retaliation, the burden then shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse action. *Id.* The employer's burden at this stage is "only one of production, not persuasion." *Id.* Finally, if the employer provides evidence of a nondiscriminatory reason for the action, then the burden shifts back to Plaintiff to prove by a preponderance of the evidence that the employer's articulated reason is a mere pretext, and that the true reason is either discriminatory or retaliatory. *Id.* "[T]he burden to demonstrate pretext merges with the ultimate burden of

11

persuading the court that the plaintiff has been the victim of intentional discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*).

### 1. Discrimination

A *prima facie* case of disparate treatment based on race or sex in violation of Title VII requires a plaintiff to show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action . . . and (4) that similarly-situated employees outside the protected class received more favorable treatment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). A *prima facie* case of age discrimination in violation of the ADEA similarly requires a plaintiff to show "(1) he [or she] is a member of the protected class; (2) he [or she] was qualified for the job and met the employer's legitimate expectations; (3) he [or she] was discharged despite his qualifications and performance; and (4) following his [or her] discharge, he [or she] was replaced by someone with comparable qualifications outside the protected class." *Causey*, 162 F.3d at 802. "The first three elements in Title VII discriminatory discharge claims are the same as under the ADEA." *Id.*

Here, Plaintiff failed to make out a *prima facie* case of discrimination. There is no genuine dispute of material fact that the second element of both her Title VII and ADEA claims is not met, because she was not satisfactorily performing her job since she failed to meet DoDEA's legitimate job expectations. As discussed above, Plaintiff's job description states that she was required to pass certain background checks, and—pursuant to statute, regulation, and policy—her job also required later reverification. During reverification, DoDEA discovered Plaintiff's FAP record and debarment, which—again, pursuant to statute, regulation, and policy—triggered her presumptive disqualification from child care services. Upon conclusion of the reverification process and Plaintiff's fitness determination, she was no longer eligible for her

position as an elementary school teacher. There is no genuine dispute as to any of these facts. Plaintiff's ineligibility to work around children for DoDEA rendered her job performance unsatisfactory, because she failed to meet the legitimate expectation for an elementary school teacher, which is being capable of being around children.

Plaintiff therefore fails to make out a *prima facie* case of discrimination. She has, accordingly, failed to raise an inference of discrimination. Even if Plaintiff had made out her *prima facie* cases, however, her claims would still fail because she has not shown by a preponderance of the evidence that Defendant's proffered nondiscriminatory reasons for her removal were pretext. Plaintiff has offered no evidence, and the Court finds none in the record, that the adverse fitness determination was not the cause of Plaintiff's removal.

Plaintiff claims that DoDEA relied upon false information, or that the removal was based on a mistake of fact. She points to the "Jackson Children Letters," Dkt. 22-3 at 1-2 (MSPB 584-85), where the children who gave rise to the FAP finding of substantiated child abuse allegations "recant[] their stories." Dkt. 36 at 21. But the relevant fact was the FAP finding, not the existence of the letters or even the underlying truth of the matter. Instead, presumptive disqualification is triggered by an FAP finding, and there is no genuine dispute that such a finding exists in this case. Accordingly, Plaintiff's race, sex, and age discrimination claims all fail.

*2. Retaliation*

Plaintiff also claims she was removed in retaliation for engaging in protected activity. The burden of proving retaliation rests upon the plaintiff. *Staley v. Gruenberg*, 575 F. App'x 153, 155 (4th Cir. 2014). Whether proceeding "by direct evidence or *McDonnell Douglas* burden-shifting, [a plaintiff] must show (i) that she engaged in protected activity and, (ii) because

13

of this, (iii) her employer took an adverse employment action against her." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 577 (4th Cir. 2015).

Plaintiff engaged in protected activity when she filed a formal EEO complaint on January 9, 2009, satisfying the first element. Her employer took an adverse employment action against her, satisfying the third element, when she was removed nine years later in 2018. Thus, to make out a *prima facie* case of retaliation, Plaintiff is required to show a causal connection. This she cannot do.

"[T]he burden for establishing causation at the prima facie stage is 'less onerous'" than the burden for establishing causation at the pretext stage. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 251 (4th Cir. 2015) (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)). Yet Plaintiff has not affirmatively identified any support which may carry this light burden. *See* Dkt. 36 at 22-23 (pointing to no support for causation and instead arguing that "temporal proximity is not a necessary element."). While Plaintiff failed to make any evidentiary showing of a causal connection, Defendant has identified Fourth Circuit precedents finding significantly shorter time periods than nine years to undermine any inference of causation. *See* Dkt. 32 at 29. Generally, "the passage of time alone cannot provide proof of causation unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'" *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)). Here, Plaintiff asks the Court to infer causation based only upon the temporal proximity, and it was not close. *See id.* (finding three to four months too long to establish causation by temporal proximity alone). Accordingly, there is no genuine dispute of material fact and Plaintiff has failed to make out a *prima facie* case of retaliation.

## IV. CONCLUSION

For the reasons stated above, and for good cause shown, Defendant's Motion for Summary Judgment, Dkt. 31, is hereby **GRANTED**. Plaintiff's Complaint is hereby **DISMISSED WITH PREJUDICE**. Judgment shall issue through a separate Order.

It is **SO ORDERED**.

March 11, 2020
Alexandria, Virginia

Liam O'Grady
United States District Judge